IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTOVO A. GARCIA,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF TULARE, et al.,<br><br>        Defendants. | 1: 08 - CV - 0940 AWI SMS<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Document #37] |

## BACKGROUND

On September 12, 2008, Plaintiff filed an amended complaint. The first cause of action is brought against Deputy Brandee Robinson and Sergeant Lines and alleges a violation of the Fourth Amendment for false arrest and imprisonment. The remaining cause of action alleges a common law false arrest claim against Deputy Robinson.[1]

On November 6, 2009, Defendants filed a motion for summary judgment. Defendants contend that Plaintiff lacks sufficient evidence to show that there was a lack of probable cause to arrest.

---

[1] By stipulation dated November 6, 2009, the parties dismissed Plaintiff's causes of action for a violation of Plaintiff's First Amendment rights, a violation of California Civil Code § 52.1 ("Bane Act"), and for intentional infliction emotional distress. The stipulation states:
    The parties further stipulate that the following causes of action remain:
        1. First and Third causes of action against defendant, Brandee Robinson.
        2. First cause of action against defendant, Sergeant Liles.

On December 5, 2009, Plaintiff filed an opposition. Plaintiff contends that Defendants violated his Fourth Amendment rights because they lacked probable cause to believe Plaintiff was the person for which they had a warrant.

On December 14, 2009, Defendants filed an opposition.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir 2003).

> Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006). A fact is material if it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Miller, 454 F.3d at 987. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.; Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. 477 U.S. at 322; Miller, 454 F.3d at 987. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. 477 U.S. at

322.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,210 F.3d 1099, 1103 (9th Cir. 2000).   The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir.2008) (quoting Fed. R. Civ. Pro. 56(e)); Miller, 454 F.3d at 987.  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Miller, 454 F.3d at 987.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cline v. Industrial Maintenance Engineering & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; In re Caneva, 550 F.3d 755, 761 (9th Cir. 2008); Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1144 (9th Cir. 2006).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; Giles v. General Motors Acceptance Corp., 494 F.3d

3

865, 872 (9th Cir. 2007).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; Price v. Sery, 513 F.3d 962, 965 n.1 (9th Cir 2008); Lockett v. Catalina Channel Exp., Inc., 496 F.3d 1061, 1064 (9th Cir. 2007).  "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255; Miller, 454 F.3d at 987; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

## UNDISPUTED FACTS

On September 25, 2006,  Magistrate Glade F. Roper issued an Arrest Warrant for Guspar Cardenas Garcia for failure to appear (Cal. Penal Code § 853.6) on three misdemeanor traffic violations; Two were for D.U.I., one was for driving without a valid license. The warrant listed

4

471 N. Mirage 2, Lindsay, CA 93247, as Guspar's address, and listed the following relevant identifying information for Guspar: Race Unknown; Height 5'3"; Weight 140 pounds; Birthdate 11/30/1973

On May 26, 2007, Plaintiff Gustavo Avila Garcia left a trailer on Randall Ross's property. Plaintiff and Mr. Ross were acquaintances. Plaintiff did not have permission to leave the trailer on Mr. Ross's property.

Mr. Ross called Plaintiff and told him to come get the trailer and received no reply. See Ross Depo. at 8. Later, Mr. Ross talked to Plaintiff. Plaintiff gave no time frame in which he would move the trailer. See id. According to Mr. Ross, Plaintiff acted like he "didn't want to come get it" and "wasn't gonna move it any time soon." See id. At 10.

Brandi Robinson is a Deputy Sheriff for the Tulare County Sheriff's Department and was on duty at the Porterville Substation on May 26, 2007.

At 1740 hours, Deputy Robinson was dispatched to 24424 Road 212, Lindsay regarding trash dumping. Randall Ross advised Deputy Robinson that he had observed "Gus Garcia" drop off a trailer and leave the property.

At 1816 hours, Deputy Robinson contacted Plaintiff by telephone. According to Plaintiff's evidence, Deputy Robinson said "when are you gonna come and move this piece of trash." See Garcia Depo. at 36. Plaintiff then asked who he was talking to, and said he had already talked to the trailer's owner. See id. Deputy Robinson then said that she was law enforcement. According to Defendants' evidence, Deputy Robinson request that Plaintiff meet her at the property. See Robinson Dec. at ¶ 8. The parties concur that Plaintiff did not agree to meet Deputy Robinson. Plaintiff requested Deputy Robinson's name, agency and badge number, as well as her supervisor's name and contact information. Deputy Robinson provided this information.

After the telephone exchange, Deputy Robinson contacted dispatch and asked that dispatch check for a warrant on "Gus Garcia", who was approximately 40 years of age. Deputy

5

Robinson was advised that a Guspar Garcia in Lindsay had a warrant for failure to appear on a misdemeanor violation of Vehicle Code § 2352.[2]  Deputy Robinson was informed that his address was 471 N. Mirage, #2.

Deputy Robinson responded to the address listed on the warrant.  At approximately 1900 hours, Deputy Robinson arrived at 471 N. Mirage Apt #2, Lindsay to locate Plaintiff.  See Crime Report at 2; Plaintiff Exhibit 2.  Deputy Robinson was unable to locate the subject.  See id.  Lindsay Police Officers advised Deputy Robinson that Gus Garcia resided across the street at 460 N. Mirage.  See id.[3]

At approximately 1900 hours, Deputy Robinson went to Plaintiff's house at 460 N. Mirage with Lindsay Police Officers.  Plaintiff was advised by "Carlos" that the police were there.  Plaintiff directed "Carlos" to close the gates to keep the officers from coming on the property.

At the property at the time were Carlos, who was working on Plaintiff's vehicle, Plaintiff's girlfriend, and her son Isaac.  See Garcia Depo. at 18; Garcia Dec. at ¶ 3.[4]

Deputy Robinson asked Plaintiff if he was "Gus Garcia".  Plaintiff responded that his legal name was Gustavo Avila Garcia.

Deputy Robinson placed Plaintiff under arrest.  See Garcia Depo. at 47.  After Deputy Robinson advised Plaintiff that he was under arrest, she handcuffed him and escorted him to her patrol car.

---

[2] Plaintiff's objection to this proposed undisputed fact is overruled.  Plaintiff's speculation on what Deputy Robinson did or knew is inadmissible.  Plaintiff's statements as to what Deputy Robinson "probably" was told is speculative.  To the extent Plaintiff's objection provides additional facts concerning the incident, they have been added.

[3] Plaintiff's objection to Defendants' proposed fact that Plaintiff had a previous arrest for failure to appeal is sustained.  The cited deposition testimony states that this incident occurred in 2008, after the events at issue in this action.  See Garcia Depo. at 16.

[4] It is unclear form Plaintiff's deposition and declaration whether there was a man working on Plaintiff's car along with Carlos, or if Carlos was the man working on the car.  Because whether there was another man on the property besides Carlos and Plaintiff is not a material fact, the court need not resolve this dispute.

6

At the time she arrested Plaintiff, Deputy Robinson had been told by Plaintiff that he had a different first name than the one on the warrant and the address on the warrant differed slightly from the address at which Plaintiff was found.[5]

After Deputy Robinson handcuffed Plaintiff, Deputy Robinson said Plaintiff was being arrested for a failure to appear on a D.U.I. Warrant.  See Garcia Depo. at 48.  Plaintiff told Deputy Robinson that it was not true and he did not have any warrants.  See 48-49.

When Plaintiff was in the vehicle, Deputy Robinson opened the door and asked Plaintiff his name and birth date.  See Garcia Depo. at 50.  Plaintiff responded "you should know, you have a warrant for me."   Deputy Robinson responded by saying "don't get smart with me."  Plaintiff then told Deputy Robinson he was born on "2/6/57".[6]

Sergeant Liles was present when Deputy Robinson arrested Plaintiff.  After Deputy Robinson arrested Plaintiff, but before she drove him to the Substation, Deputy Robinson conferred with Sergeant Liles.  Deputy Robinson and conferred again with Sergeant Liles after Plaintiff told Deputy Robinson his birth date was February 6, 1957.

Plaintiff was transported to the Porterville Substation for booking on the warrant.  At he Substation, Deputy Robinson had Plaintiff turn out his pockets.  A California Driver's License was found, listing Plaintiff's name as "Gustavo Avila Garcia" with a date of birth of February 6, 1957.

Deputy Robinson compared this information with the name on the warrant, which was "Guspar Cardenas Garcia, DOB 11/30/73."

Deputy Robinson then advised Plaintiff that he was not the person on the warrant and returned him to his home.

---

[5] Whether these differences establish a constitutional violation is discussed below.  As such, the court declines to include the parties proposed facts concerning Deputy Robinson's state of mine.

[6] Contrary to Plaintiff's proposed fact, there is no evidence Deputy Robinson had been told the birthdate of the person who had the warrant.  She was working off a description of 40 years old as provided by Mr. Ross.

7

Plaintiff was sixteen years older, five inches taller, and at least 40 pounds heavier than the warrant subject – Guspar Cardenas Garcia. While their addresses were different, Plaintiff lived on the same street. California driver's license number was different than Guspar Cardenas Garcia, but Deputy Robinson did not discovery the driver's license numbers until she looked at the driver's license. Plaintiff's and Guspar Cardenas Garcia's last names were the same, and one abbreviated version of their legal first names is the same.[7]

Plaintiff was returned home at 2019 hours.

## DISCUSSION

**A. Fourth Amendment**

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." To arrest a suspect on probable cause, the facts and circumstances within the officer's knowledge must be "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979); Moreno v. Baca, 431 F.3d 633, 639 (9th Cir. 2005).

In this action, the parties agree that Deputy Robinson had knowledge of a warrant for "Gus Garcia" who was about 40 years old. The parties also agree that Plaintiff is not the person named in the warrant – Guspar Cardenas Garcia. Rather, Plaintiff's name is Gustavo Avila Garcia and he told this to Deputy Robinson prior to his arrest. As such, the parties agree Deputy Robinson had no warrant allowing her to arrest Plaintiff. However, this does not

---

[7] Plaintiff's proposed facts on what Deputy Robinson believed or knew about whether Plaintiff was the person named on the warrant will be disregarded. These proposed facts are actually arguments going to the merits of Plaintiff's position that Deputy Robinson violated the Constitution when she arrested him.

8

mandate the court find that Plaintiff's Fourth Amendment rights were violated because not all arrests of the wrong person violate the Constitution. "When the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." Hill v. California, 401 U.S. 797, 802 (1971). Thus, the question in this action is whether the undisputed facts reveal that Deputy Robinson's mistaken arrest of Plaintiff was reasonable.

In Hill v. California, 401 U.S. 797 (1971), police arrested a man named Miller based on the mistaken belief that he was another man named Hill. Police had probable cause to arrest Hill. The police found Miller in Hill's apartment. Id. at 803-04. Miller fit the description of Hill, even though Miller was two inches taller and 10 pounds heavier than Hill. Id. at 803 & n.6. Miller offered identification that identified him as Miller, but the Supreme Court recognized that aliases and false identifications are not uncommon. Id. at 803 & n.9. Further contributing to the officers' reasonable belief that Miller was really Hill were the facts that Miller's explanation for his mode of entry was not convincing and he denied any knowledge of firearms, despite a pistol and loaded clip in plain view. Id. at 803. The Supreme Court found the arrest of Miller valid:

> The upshot was that the officers in good faith believed Miller was Hill and arrested him. They were quite wrong as it turned out, and subjective good-faith belief would not in itself justify either the arrest or the subsequent search. But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time.

Id. at 803-04. Numerous cases from both the Ninth Circuit and other Circuits provide examples of when courts will grant summary judgment on police officers' reasonable mistake claims.

In Lee v. Gregory, 363 F.3d 931 (9th Cir. 2004), Federal Bureau of Investigation ("FBI") Special Agent Jake Gregory ("Gregory") was assigned to assist with a nationwide search for federal fugitive Robert Q. Lee ("Robert") by finding and interviewing Robert's brother, Julian Christopher Lee ("Julian"). Id. at 932. As part of the investigation, Gregory interviewed J.B., a

9

friend of Julian, who was shown a picture of Robert.  J.B. stated that Julian was not the man in the photograph.  Id. at 933   When Gregory did contact Julian, he declined to speak to Gregory. Id. at 932-33.  "Gregory then obtained a copy of an outstanding Florida arrest warrant for 'Christopher Lee,' Julian's middle name and one of Robert's aliases, known as such to the FBI." Id. at 932.  This warrant described Christopher Lee as a black male, six feet one inch tall and 200 pounds and gave a Florida address and driver's license number.  The date of birth and social security number on this warrant were the same as Julian's.  Id. at 933.  Gregory passed the warrant to the San Diego Sheriff's Office and told them that he had located the man named in the warrant.  Id. 933-34.  After the Sheriff's Office arrested Julian, Julian filed a civil rights action in which he contended "that in light of the facts and circumstances confronting Gregory, Gregory actually knew that the Florida warrant applied not to him, but to Robert."  Id. at 935.  The Ninth Circuit found that "[k]nowingly arresting the wrong man pursuant to a facially valid warrant issued for someone else violates rights guaranteed by the Fourth Amendment."  Id. Because taking the facts in the light most favorable to Julian, Gregory knew that Julian was not the man wanted in the warrant, the Ninth Circuit found that summary judgment on Julian's claim of unreasonable seizure was not warranted.  Id.

In Bingham v. City of Manhattan Beach, 341 F.3d 939 (9th Cir. 2003), Howard Bingham ("Bingham") was pulled over by Manhattan Beach Police Officer Robert Schreiber ("Schreiber") in the early morning hours of October 4, 1999.  Id. at 942.  The driver's license that Bingham gave to Schreiber had expired four months earlier.  Noting this fact, Schreiber returned to his police car and ran a check on Bingham's identifying information in the mobile computer in the patrol car.  Id. at 943.  The computer informed Schreiber that a "no-bail felony warrant" was outstanding for a person named Andre Bingham.  The computer informed Schreiber that: "(1) Andre Bingham resided at the same address listed on Howard Bingham's driver's license on Towne Avenue; (2) the warrant was for some type of grand theft and was issued in 1977, approximately 22 years earlier; (3) the physical description on the warrant differed from that on

10

Bingham's driver's license in that the heights differed by one inch and the weights differed by ten pounds." The Ninth Circuit determined that detaining "Bingham to verify a warrant whose identifying information matched him so closely is not an objectively unreasonable decision." Id. at 952. Thus, summary judgment was appropriate.

In Watts v. County of Sacramento, 256 F.3d 886 (9th Cir. 2001), Sacramento's Crime Alert Center received an anonymous tip stating that Chris Burgess ("Burgess"), for whom there was an outstanding arrest warrant for murder, had been seen standing in front of a certain residence (later determined to be that of the plaintiffs). Id. at 888. The warrant gave an address for Burgess in San Jose and it did not list the address where the plaintiffs lived. The tipster claimed that Burgess was living at the plaintiffs' address. Id. at 888. Sergeant Munn ("Munn") received a computer dispatch, along with a call from another sergeant, requesting that he investigate the tip. The dispatch informed Munn that: (1) Burgess was a black male standing 6'1" and weighing 200 pounds; (2) there was a warrant for Burgess's arrest on a murder charge; and (3) Burgess was possibly located at a certain address with his girlfriend and two children. The dispatch did not indicate that Burgess lived at the address provided by the tipster. Id. Munn assembled a team of five officers and relied the information from dispatch. Officer Morace knocked on the plaintiffs' door with his gun drawn, and Christopher Pryor answered the door. "Morace observed that Pryor generally fit Burgess's description and inquired whether his name was Chris. Pryor responded affirmatively." Id. Prior was in his boxer shorts and had no visible tattoos. After handcuffing Pryor, Sergeant Munn obtained Pryor's identification, had a check run, and discovered that the identification was valid. At some point, the officers also observed that Pryor did not bear the identifying tattoos that Crime Alert had indicated Burgess had. After about thirty to forty-five minutes, the officers released Pryor from the handcuffs and left the house. Id. The Ninth Circuit found that it could not "say as a matter of law that it was reasonable for the officers to believe that Pryor was Burgess", and "summary judgment was inappropriate on Pryor's § 1983 illegal entry and detention claims." Id. at 890. In its general

11

analysis, the Ninth Circuit cited to the fact that "the anonymous tipster was never identified, and there [was] no evidence that the sheriff's department made any effort to check directories and verify that the address given by the tipster, but not listed in the warrant, was in any way connected with Burgess." Id.

In Tibbs v. City of Chicago, 469 F.3d 661 (7th Cir. 2006), police were told that a suspicious African-American male was loitering in a high-crime public housing project. Id. at 662. Officers proceeded to a location just a block or two away from the location given and spotted Tibbs, who fit the general description given by the resident. Id. The officers asked for identification and Tibbs produced a valid Illinois driver's license identifying him as "Ronald A. Tibbs" and listing his birth date as October 14, 1955. "The officers ran a name check on their squad car's computer, and it showed there was an eleven-year-old, unexecuted traffic warrant for a 'Ronald L. Tibbs.' The warrant indicated 'Ronald L. Tibbs' was an African-American male born on January 9, 1949. Id. When the officers questioned Tibbs about the warrant he was confused by a warrant for a traffic violation he actually had committed and told officers that he thought it had been taken care of already. Id. at 662-63. "Despite the discrepancies in the middle initials and birth dates, the officers arrested Tibbs because his responses to their questions suggested he knew about the warrant, and the warrant's description matched his first and last names, race, and sex." Id. at 663 (footnotes omitted). The Seventh Circuit determined that the only question to determine if Tibbs had a valid Fourth Amendment claim was whether the officers reasonably believed that this Ronald Tibbs was the person named in the warrant. Id. at 664. In finding no violation, the Seventh Circuit pointed to the fact Tibbs had no evidence to support his allegation that the officers actually knew they were arresting the wrong Ronald Tibbs. Id. at 665. The Seventh Circuit noted that Tibbs' own statement at the scene about a warrant was evidence to show the officers thought they were arresting the right Ronald Tibbs. The Seventh Circuit found that based on the evidence in the summary judgment record, no reasonable jury could find the officers acted unreasonably in arresting Tibbs. Id. at 665.

In Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002), Sgt. Farrell requested passenger Joe John Rodriguez ("Rodriguez") provide them with identification after a traffic stop. Rodriguez had more than ten pieces of identification, all identifying his as Joe John Rodriguez, including a Florida driver's license, birth certificate, military discharge papers, social security card, credit card, and V.A. patient data card. Id. at 1343. Sgt. Farrell called dispatch over his radio and ran a check on Rodriguez's driver's license information, and was told there were "no wants or warrants". Id. at 1344. While Sgt. Farrell was talking to the dispatcher, there was a "name hit" for Rodriguez's name. "Teletype communications to the dispatcher indicated that three warrants existed for a Victor Heredia who used the alias 'Joe Rodriguez.'" Id. Rodriguez's identifying information was identical to the information listed in Heredia's warrant in four critical aspects: Rodriguez's name and Heredia's alias were the same, they were the same sex, same age, and same race. Other information was similar: "(1) they had similar Social Security numbers; (2) they had addresses in neighboring towns; and, (3) they were born in the same state. Many of Rodriguez's tattoos were in the same locations as Heredia. Against all of these similarities, was one material difference: Rodriguez said he was 5'11" tall and the warrant listed Heredia as 5'6"." Id. at 1347-48. Under the circumstances, the Eleventh Circuit found the mistake reasonable and summary judgment appropriate.

In Ingram v. City of Columbus, 185 F.3d 579 (6th Cir. 1999), an individual named Anthony Carroll ("Carroll") approached an undercover officer and offered to sell him one unit dose of crack cocaine. Id. at 584. Upon hearing that he was under arrest, Carroll fled on foot, running through private yards. Four officers pursued him on foot while other officers followed Carroll in their vehicles. Carroll rushed into a residence belonging to Ray Womack and others, ran into the basement, and crawled under a bed. Id. A number of armed officers followed Carroll into the residence. Id. at 585. The officers found Ray Womack in the basement asleep. The officers awakened Ray Womack, handcuffed him, brought him up to the living room, and placed him face down on the floor. Id. At some point, the officers realized that Ray Womack

13

was not the suspect they had chased, they searched the house again, and they found Carroll hiding in the basement Id. Citing Hill, the Sixth Circuit found "a genuine issue of fact existed as to whether the officers' mistake in identifying Ray Womack as Carroll was a reasonable one." Ingram, 185 F.3d at 596. The Sixth Circuit reasoned that taking the plaintiffs' facts as true,

> Ray Womack was napping in his basement when apprehended by the police and thus could not have been the same man who attempted to sell drugs to Sgt. Dunlap and then outran several officers who were in 'hot pursuit.' These facts give rise to the genuine issue of whether reasonable police officers would have mistaken a man who was or had been napping for one who had just finished outrunning them at top speed. '

Id. The Sixth Circuit further pointed to evidence suggesting that Ray Womack and Carroll did not even resemble each other because Ray Womack had very light complexion but Carroll had very dark complexion. The Sixth Circuit concluded that because there were genuine disputed issues of material facts as to whether the defendants' mistake in arresting Ray Womack was a reasonable one, summary judgment could not be granted to Ray Womack's claim.

In Blackwell v. Barton, 34 F.3d 298 (5th Cir. 1994), Barton, a peace officer who was investigating "hot checks" for the District Attorney's Office, sought to arrest a Melinda K. Allen ("Allen") on an outstanding warrant. Id. at 300. Barton knew that Allen worked in health spas and went by the name "Mindy." Id. Barton went to the Ultra Fit Health Club and asked a receptionist if he could speak to "Mindy." The receptionist replied that "Mindy" was teaching a class but would be out soon. Id. Meanwhile a woman named Mindy Michelle Blackwell ("Blackwell") was teaching a class at the Club. Id. at 300. After she finished working, Blackwell approached Barton and identified herself as "Mindy." According to Barton, Blackwell's appearance was substantially similar to the physical description of Allen. Id. Allen's driver's license stated she was a white female; born November 2, 1964; 5 feet 3 inches tall; weighing 115 pounds; with brown hair and brown eyes. Blackwell's drivers license stated that she was a white female; born August 8, 1964; 5 feet 4 inches tall; weighing 125 pounds; with red hair and green eyes. Id. at 300 n.1. Barton requested that Blackwell accompany him, and once they were

14

outside the Club, Barton informed Blackwell that she had $1,000 in outstanding checks. Id. at 300. Blackwell said she had not signed any bad checks, gave Barton her driver's license, which Barton put in his pocket, and followed Barton to the county law enforcement center upon Barton's request. Id. When Barton and Blackwell arrived at the center, two jailers who knew Blackwell were present. Id. When the name Melinda Allen was mentioned, Blackwell informed Barton that her name was not Melinda. When Barton had confirmed this information, he escorted Blackwell to her car. Id. Blackwell sued Barton pursuant to 42 U.S.C. § 1983 and the Fifth Circuit found that the issue was whether Barton reasonably mistook Blackwell for Allen.[8] Blackwell, 34 F.3d at 303. The Fifth Circuit determined that no inference could be drawn that Barton knew or believed he was or likely was arresting someone other than Allen. Id. at 304. The Fifth Circuit reasoned that Allen and Blackwell were the same height and weight, sex, race, age, used the same nickname, and Blackwell was at a location where Barton expected to find Allen. Id. Thus, the Fifth Circuit reversed the denial of Barton's summary judgment motion.

In Johnson v. Miller, 680 F.2d 39 (7th Cir.1982), Annette Jenkins ("Jenkins") had used Shannon Johnson ("Johnson")'s name and her savings account to defraud the First National Bank. The bank caught Jenkins, and though it knew or should have known that she was not Johnson filed a criminal complaint against Johnson and gave Johnson's address to police. A warrant for Johnson's arrest was issued, "but the description on the warrant was for a black female, five-foot-seven and weighing 172 pounds, born February 5, 1951." Johnson was a five-foot-five white woman, born May 2, 1951. Id. at 40. The Seventh Circuit concluded, as a matter of law, that the police officer's misidentification arrest of a white woman pursuant to an arrest warrant for a black woman did not violate the Constitution. Id. 42. The court reasoned:

> We do not think the arresting officer, Miller, can be said to have acted wrongfully merely because the warrant he executed contained a description that did not match

---

[8] Because the defense had raised the issue of qualified immunity, the Fifth Circuit found that: "Couched in terms of qualified immunity, however, we must address one further level of reasonableness and ask ourselves whether a reasonable officer in Barton's position could believe that there was reasonable cause to believe that Blackwell was the person named in the warrant."

> the appearance of Miss Johnson. For Miller the main thing was that the name was right. The purpose of the description was to help him, as the arresting officer, identify her and he needed no help since she acknowledged that she was the person named in the warrant. If an officer executing an arrest warrant must do so at peril of damage liability under section 1983 if there is any discrepancy between the description in the warrant and the appearance of the person to be arrested, many a criminal will slip away while the officer anxiously compares the description in the warrant with the appearance of the person named in it and radios back any discrepancies to his headquarters for instructions.

Id. at 41.

In this action, there is no evidence that Deputy Robinson or Sgt. Liles knew Plaintiff was not the man wanted in the warrant.  Even taking the facts in the light most favorable to Plaintiff, all Plaintiff has shown is that Deputy Robinson knew Plaintiff's stated first name did not match the name on the warrant.  While Plaintiff turned out to be 50 years old and Deputy Robinson was looking for a man about forty, the forty-year-old description of Plaintiff came from Mr. Ross, who was describing Plaintiff.  In this case, no inference can be drawn that Deputy Robinson knew or believed she was or likely was arresting someone other than Gus Garcia with an outstanding warrant.  The person Deputy Robinson arrested was the same sex as the person named in the warrant, used the same nickname, appeared to be near the same age as the person on the warrant, and was found near the location where she expected to find "Gus Garcia."

Plaintiff emphasizes that the warrant had a different first name than the one he told to Defendants.  However, in Hill the police arrested a man who produced identification showing he had a completely different name than that of the actual suspect.  See Hill, 401 U.S. at 799.   The fact that Plaintiff provided evidence that he was Gustavo, and not Guspar as named on the warrant is not a strong factor in finding a lack of reasonableness.

Further, this case has similarities to those in which the plaintiff's own actions led the police to believe they were arresting in the correct person.   Plaintiff was uncooperative and evasive.  He first refused to discuss the trailer left on Mr. Ross's property with Deputy Robinson.  Then, when Deputy Robinson and police arrived, Plaintiff directed that the gates to his property be closed.   When asked for his date of birth, Plaintiff originally told Deputy

16

Robinson "you should know, you have a warrant." While Plaintiff's conduct was lawful, it does contribute to a finding that Deputy Robinson's mistake was reasonable.

Plaintiff makes much of the fact that the warrant and Plaintiff's driver's license contained dissimilar information, particularly about the birth dates of Plaintiff and the person for whom there was a warrant. However, Deputy Robinson was looking for a man she had been told was about forty, only a few years less than the person named in the warrant, not the fifty year old man Plaintiff turned out to be. There is also no evidence that Deputy Robinson had a complete copy of the warrant when she approached Plaintiff. The evidence only shows she had been told about a warrant for "Gus Garcia" who lived at an address near Plaintiff's location. There is also no evidence or argument that Deputy Robinson was required by law to review Plaintiff's driver's license and the warrant while still at Plaintiff's residence and there are no facts showing the license and warrant were even available to her at this time.

There are limits on how much independent investigation an officer must make before executing an arrest warrant, even when the arrested person is asserting a claim of mistaken identity. Baker v. McCollan, 443 U.S. 137, 145-46 (1979). The question is not whether the police could have done more; but whether they did just enough. Plaintiff was released within minutes of arriving at the jail when it was realized that Plaintiff was not the person who was the true subject of the arrest warrant. Based on the undisputed facts and the totality of the circumstances, the court cannot find Deputy Robinson's mistake unreasonable.

**B. False Arrest**

Under California law, "false arrest is not a different tort" but "is merely one way of committing a false imprisonment." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Asgari v. City of Los Angeles,15 Cal.4th 744, 752(Cal. 1997). The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief. Blaxland v. Commonwealth Director of Public Prosecutions, 323 F.3d 1198, 1205 (9th Cir.

2003); Fermino v. Fedco, Inc., 7 Cal.4th 701, 715 (1994). "A cause of action for false imprisonment based on unlawful arrest will lie where there was an arrest without process followed by imprisonment." Watts v. County of Sacramento, 256 F.3d 886, 891 (9th Cir. 2001).

Defendants contend that they are entitled to summary judgment on Plaintiff's state law cause of action for false arrest pursuant to the immunity found in California Civil Code § 43.55(a). Section 43.55(a) provides in pertinent part that:

> There shall be no liability on the part of, and no cause of action shall arise against, any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if the peace officer acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant.

Cal. Civil Code § 43.55(a).

In Lopez v. City of Oxnard, 207 Cal.App.3d 1, 10 (1989), a person arrested for drunk driving gave Lopez's name, address, and birth date. When the person did not appear in court, a warrant was issued for Lopez's arrest. Id. at 5. After Lopez had been arrested on this warrant, the court provided him with a "disposition sheet" to carry with him, which stated that he was not the person described in the warrant. Id. The plaintiff was arrested two more times by officers who refused to investigate the validity of the disposition sheet. Id. Invoking Civil Code Section 43.55, the California Court of Appeals held that the defendants had a reasonable belief that the arrest was lawful because the warrant accurately described the plaintiff. Id. at 8. The court reasoned that arresting officers were required to "act swiftly and to make on-the-spot evaluations, often under chaotic conditions." Id. at 7.

In Robinson v. City and County of San Francisco, 41 Cal.App.3d 334 (1974), a warrant existed for a man named Harold Cunningham, but officers arrested the well-known performer Smokey Robinson instead. The California Court of Appeals stated that "[w]here evidence is fairly subject to more than one interpretation, the question of whether the jailer acted with reasonableness is a triable factual issue for the jury to decide." Id. at 337. However, the issue of reasonableness is not raised by the mere allegations that an arrest was unreasonable, but by the

18

particular facts of the case.  Id.

For the reasons discussed above, Plaintiff has failed to offer evidence of a disputed material fact on whether the officers had a reasonable belief that Plaintiff was the "Gus Garcia" named in the warrant.  Plaintiff does not contest warrant's validity nor does he allege malice. Given that Plaintiff shares similar names and addresses with the person named in the arrest warrant, Deputy Robinson had a reasonable belief that the arrest was lawful.

The fact that there are discrepancies between Plaintiff's and Guspar Cardenas Garcia's appearances does not mean the arrest was invalid.   Plaintiff cites no evidence that at the time of the arrest Deputy Robinson knew Plaintiff was sixteen years older, five inches taller, and at least 40 pounds heavier than Guspar Cardenas Garcia.  The only discrepancies of which there is evidence Deputy Robinson knew are the differences between the first name Guspar and Gustavo and slightly different addresses.  Not all discrepancies between a warrant description and those of the arrestee require an officer to refrain from executing a valid arrest warrant.  See Bingham, 341 F.3d at 952.  The discrepancies in this case did not render the mistake unreasonable under the totality of the circumstances.

**ORDER**

Based on the above memorandum opinion, the court ORDERS that Defendants' motion for summary judgment is GRANTED.

The jury trial and all dates and orders relating to the jury trial are hereby vacated.

IT IS SO ORDERED.

**Dated:   January 26, 2010**              **/s/ Anthony W. Ishii**
                                        CHIEF UNITED STATES DISTRICT JUDGE